[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Neal B. Goldberg and Ann K. Thompson bring this suit to collect on a promissory note dated December 23, 1993 in the original principal amount of $153,530 signed by the defendant, Victor Winogradow. After a trial of the action the court finds the following facts.
The aforementioned promissory note (the "Note") was signed by the defendant on or about December 23, 1993. The Note was in payment for 100 shares of stock in Nova Dye Print Corp. and provided that it was "payable on December 31, 1994 in the principal amount of One Hundred Thousand Dollars ($100,000) and the balance of said sum to wit Fifty Three Thousand Five Hundred Thirty Dollars ($53,530) shall be due and payable on June 30, 1995."
The amount due on December 31, 1994 was not paid on that date. However, on or about January 10, 1995, the plaintiff, Neal Goldberg, received $25,000 in payment on the Note and by check dated February 2, 1995, he received another $5,000.
By Assignment of Promissory Note date August 4, 1998, Neal Goldberg assigned the Note to himself and the plaintiff, Ann K. Thompson, as tenants in common pursuant to the marriage dissolution proceedings between Goldberg and Thompson.
No payments other than the $30,000 previously mentioned have been made on the Note. The principal amount of $123,530 is currently due on the Note. The Note provides that the payments due thereunder are "without interest." Therefore, from the date of the execution of the Note, until the dates for payment set forth in the Note, no interest was due. However, since the required payments were not made, the plaintiffs have requested and the court will award interest from June 30, 1995 until the present at the rate of 10% per annum pursuant to Connecticut General Statutes § 37-3a, which provides for the award of interest at that rate "as damages for the detention of money after it becomes payable." CT Page 16248 The total amount of interest due is $92,257.64 and the total amount due from the defendant is $215,787.64.
At trial the defendant testified that he received no consideration for the Note because the stock in Nova Dye Print Corp., which he purchased with the Note was worthless. The defendant further testified that he and Goldberg had an oral side agreement that any repayment of the Note would be made only from dividends paid by Nova. He also testified that he executed the Note at the request of Neal Goldberg so that Neal Goldberg could hide assets from his then wife, Ann Thompson, during his divorce proceeding. The court finds that the defendant's testimony in support of the foregoing defenses was not credible. The testimony was contradicted by the terms of the documents pertaining to the Note and Nova Dye Print Corp. and the facts surrounding the dissolution of the plaintiffs' marriage.
The defendant was employed in the banking industry for many years prior to 1992. His last position in that industry was a vice president who dealt with commercial loans. In 1992 the defendant left the banking industry to become an entrepreneur. In his first venture, he and two other people purchased a bankrupt textile mill, known as Nova Dye 
Print Corp. ("Nova") in Waterbury, Connecticut. The defendant and his two partners each paid $300,000 for a one third interest in the stock of Nova. Shortly after the defendant purchased his shares in Nova, Neal Goldberg paid the defendant $100,000 for one third of the defendant's shares in Nova.
On December 1, 1992 the defendant and Goldberg entered into an Agreement, which provided in relevant part:
 At any time Victor Winogradow shall have the right to repurchase for a cash payment, or upon other terms and conditions as my be satisfactory to Neal Goldberg and Victor Winogradow, the 100 shares of common no par value stock of ova Dye Print Corp. currently owned by Neal Goldberg for the price indicated below:
a. through December 31, 1993 — $170,000
b. through December 31, 1994 — $255,000
c. through December 31, 1995 — $382,000
d. through December 31, 1996 — $573,000
A year later, the defendant still wanted to repurchase Goldberg's CT Page 16249 shares in Nova and by letter dated December 23, 1993, the defendant stated:
 [I]t is hereby agreed that you will sell, effective December 21, 1993, the 100 shares of no par value common Stock . . ., to me for a price of $153,530. The consideration shall be payable on December 31, 1994 in the amount of $100,000 and on June 30, 1995 in the amount of $53,530. While this transaction is to be effective as of December 21, 1993, a Promissory Note in the form attached hereto will evidence the obligation of payment.
The Promissory Note attached to the letter was the same as the Note in question.
At the time the defendant signed the Note, he did not believe that Neal Goldberg's shares in Nova were worthless, as he testified at trial. Rather, he appeared to believe that his first venture as an entrepreneur would be successful, and anticipated an increase in the value of the shares. Moreover, there was nothing in the documents which provided that the defendant was only obligated to pay the Note from Nova dividends. In fact, $5,000 of the $30,000 payment on the Note came from the personal account of the defendant, and not from Nova.
The plaintiffs separated in August, 1995 and were divorced in 1998. This timeline severely undercuts the defendant's testimony that he signed the Note [in 1993] to help Goldberg hide assets during his divorce. Winogradow agreed that if Goldberg had wanted to minimize his assets on his financial affidavit in dissolution proceedings, it would have made much more sense to list ownership of shares in Nova, rather than a promissory note with a stated value. Thus, his own testimony served to underscore the incredibility of Winogradow's explanation of the genesis of the Note.
Nova did make a small profit in 1994, but ultimately did not succeed, thus leading Victor Winogradow to regret and attempt to repudiate the execution of the Note, which, in hindsight, was not beneficial to him. However, the law does not generally favor the use of hindsight. Gold v.University of Bridgeport School of Law, 19 Conn. App. 379, 384,562 A.2d 570 (1989). A party is not permitted to escape a bad bargain because it is burdensome. Decarlo And Doll, Inc. v. Dilozir,45 Conn. App. 633, 642, 698 A.2d 318 (1997), citing Texas Gulf SulphurCo., 508 F.2d 283, 294 (7th Cir. 1974). CT Page 16250
Judgment is hereby entered in favor of the plaintiffs against the defendant, Victor Winogradow, in the amount of $215,787.64. Under the terms of the Note the plaintiffs are also entitled to recover the attorneys' fees they have incurred in connection with their attempt to obtain payment on the Note. The court will hold a hearing on the amount of attorneys' fees.
By the court,
___________________ Aurigemma, J. CT Page 16251